IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ALDO R. BONDS,                )
                              )
    Plaintiff,           )
                              )
                              )    CIV-09-1332-W
v.                            )
                              )
MICHAEL J. ASTRUE,            )
  Commissioner of Social Security )
    Administration,     )
                              )
    Defendant.           )

REPORT AND RECOMMENDATION

Plaintiff, who appears *in forma pauperis*, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his concurrent applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___ and Supp. TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On June 1, 2006, the date on which Plaintiff alleged he became disabled, Plaintiff was

45 years old. (TR 22, 93, 99).[1] In his applications filed June 28, 2007, Plaintiff alleged he became disabled on June 1, 2006, due to lumbar strain, depression, muscle spasms, and high blood pressure. (TR 93-98, 99-102, 116, 135). Plaintiff stated he had a tenth grade education. (Supp. TR 5). He described previous work as an auto detailer, building maintenance worker, grill cook, newspaper warehouse worker, and stock clerk. (TR 137,143). Plaintiff alleged that he stopped working on June 30, 2002, due to pain and lack of mobility. (TR 136). However, Plaintiff was incarcerated between August 2004 and May 2007, and Plaintiff informed a treating mental health counselor in February 2008 that his previous job as a building maintenance worker ended in August 2004 when he was incarcerated. (TR 440, 512).

Plaintiff stated to an examining physician in October 2006 that he had suffered a chronic back ache since 2000 due to carrying an overweight backpack. (TR 265). In August 2007, Plaintiff described a history of back pain since 2002, radiating down to both lower extremities. (TR 440). Plaintiff's medical record shows that an electromyographic ("EMG") test conducted in April 2003 was interpreted by Dr. Wei as showing bilateral L5 and S1 radiculopathy without evidence of myopathy, peripheral neuropathy, or peroneal neuropathy. (TR 203). Magnetic resonance imaging ("MRI") testing of Plaintiff's lumbar and thoracic spines conducted in February 2007 was interpreted by Dr. Yi as showing no abnormality in Plaintiff's lumbar spine and an abnormal signal within the thoracic spinal cord. (TR 227-

---

[1] Plaintiff initially alleged his disability began on August 24, 2001, but at his administrative hearing Plaintiff amended his alleged disability onset date to June 1, 2006. (TR 11, 93, 99, 578).

2

228). EMG testing conducted in December 2006 was interpreted by Dr. Lanford, a neurologist, as showing active right L5-S1 radiculopathy and no myopathy. (TR 233-234). X-rays of Plaintiff's feet and hands were interpreted by a treating prison physician in July 2006 as negative for arthritis. (TR 270). A left foot x-ray conducted in June 2006 was normal. (TR 341).

In August 2007, Plaintiff's treating physician, Dr. Barte, noted that Plaintiff's back exhibited no muscle spasm, decreased side bend and rotation, and flexion to 80 degrees. (TR 440). Plaintiff exhibited no foot drop, but he was bearing more weight on his left foot. (TR 440). In October 2007, Dr. Barte noted Plaintiff was "morbidly obese" and needed to lose weight. (TR 438). Dr. Barte also noted Plaintiff's report that he had been walking to lose weight, and Dr. Barte encouraged Plaintiff to exercise for 30 to 45 minutes at a time 3 to 5 times per week. (TR 435). Dr. Barte noted Plaintiff's hypertension was controlled on medication. (TR 435, 438). Medication was prescribed for low back pain. (TR 436).

In documents submitted to the agency in 2007 Plaintiff estimated he could walk one hour, stand one hour, sit one hour, never bend, lift 10 pounds, and frequently reach. (TR 118). Plaintiff described constant pain in the right side of his lower back radiating into both legs and muscle spasms. (TR 151-152, 164). Plaintiff stated that he took pain medications, but the medications did not relieve the pain and that he walked with a limp. (TR 157, 165). Although Plaintiff stated in June 2007 that he did not use a cane or other assistive device, he subsequently stated in October 2007 that his pain was worse and he used a cane to walk. (TR 118, 165). Plaintiff stated he lived with his mother and provided care for her, including

3

helping her get out of bed, getting her medications, performing housekeeping, laundry, cooking, and cleaning chores, and taking her to doctors' appointments. (TR 166-169).

Plaintiff has an extensive criminal history beginning in 1979 through 2004. (TR 510; Supp. TR 6). He was incarcerated at the time he alleged his disability began, on June 1, 2006, and he was released from confinement in May 2007 after a 3 ½ year term of imprisonment for a grand larceny conviction. (TR 510). The medical record shows Plaintiff also has a history of substance abuse, and he was using crack cocaine and marijuana regularly while undergoing mental health treatment in January and February 2008. (TR 503, 505, 514, 517). At that time, Plaintiff was being supervised on probation. (TR 505, 509). Plaintiff was diagnosed by his treating mental health counselor in January 2008 with cannabis dependency, cocaine abuse, depression, "rule out" malingering, and chronic pain. (TR 486).

In March 2008, Plaintiff's treating counselor noted that his mood swings were responding to antidepressant medication, which had been prescribed in January 2008, and Plaintiff had decreased his use of illegal substances. (TR 475, 480). In a mental status examination, the counselor noted Plaintiff exhibited an intact memory and no other mental deficits except for some cognitive slowing, which the counselor noted was probably the result of Plaintiff's heavy previous cannabis use and depression. (TR 475-476). The counselor noted that anxiolytic medication had reduced Plaintiff's pain. (TR 476). A treating counselor noted in February 2008 that Plaintiff had a "low" level of mental health symptoms and a "moderate" level of substance abuse symptoms. (TR 518).

Plaintiff's applications were denied initially and on reconsideration. (TR 37-40). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Gatewood ("ALJ") on January 7, 2009. (Supp. TR 1-37). At this hearing, Plaintiff and a vocational expert ("VE") testified. The ALJ subsequently issued a decision on July 13, 2009, in which the ALJ concluded that Plaintiff (1) was insured for the purpose of Title II disability insurance benefits only through March 31, 2008, and he therefore must establish disability on or before that date; (2) Plaintiff had severe impairments due to lumbar disc bulges with radiculopathy into right leg, hypertension, obesity, cannabis dependency, and cocaine abuse; (3) although Plaintiff had been diagnosed with a major depressive disorder, not otherwise specified, and anxiety disorder, these impairments had resulted in only "mild functional limitations and therefore Plaintiff did not have a severe mental impairment; (4) despite Plaintiff's severe impairments he had the residual functional capacity ("RFC") to perform light work with restrictions;[2] and (5) Plaintiff was not disabled within the meaning of the Social Security Act because there were jobs available in the economy which he could perform, including the jobs of receptionist, retail store clerk, hotel clerk, bench assembler, touch-up screener, and polisher. (TR 11-24). The Appeals Council declined to review this decision. (TR 1-3). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

---

[2]The ALJ specifically found that Plaintiff could "stand and/or walk for thirty minutes at a time for four hours in a work day. He [could] stoop, kneel, crouch, and climb ramps or stairs occasionally. He [could not] climb ladders, ropes, or scaffolds. He [could not] work at unprotected heights or around hazards." (TR 19).

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The

6

Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2010); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Step Two

Plaintiff contends that the ALJ erred by making inconsistent findings with respect to the severity of Plaintiff's mental impairments. Plaintiff asserts that a similar error occurred in the unpublished decision in Fleetwood v. Barnhart, 211 Fed. Appx, 736, 2007 WL 18922 (10th Cir. 2007), and in that case the court vacated the Commissioner's decision and remanded for further administrative proceedings. Plaintiff seeks this same result here. In Fleetwood, the ALJ made findings in the administrative decision that the claimant had severe mental impairments but also inconsistently stated, without explanation, that the claimant did not have a severe impairment and had not had any psychiatric treatment. The court noted it could remand for clarification concerning the severity issue, but the court found an additional reason to remand, namely, the ALJ's "conclusory" findings that did not include an analysis of significant evidence in the record from a treating physician and a consulting doctor repeatedly referring to the claimant's medical impairments and the medications she took for

7

those impairments. Id. at *2-*3.

In this case, the ALJ initially found that the "claimant has 'severe' impairments," including the mental impairments of "adjustment anxiety; a depressive disorder, not otherwise specified; cannabis dependency; and cocaine abuse." (TR 15). The ALJ subsequently addressed the requisite functional limitations resulting from these mental impairments at step three. See 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ made specific findings regarding Plaintiff's functional restrictions based on the objective medical evidence and Plaintiff's testimony and statements in the record. (TR 18-19). The ALJ found that Plaintiff exhibited mild restrictions in activities of daily living based on Plaintiff's statements that he prepared meals, drove his mother to the doctor, paid her bills, helped her with her personal care and medications, attended church, shopped, did laundry, watched television, did stretching exercises, made telephone calls, got up around 10:00 a.m. and retired to bed around 11:00 p.m., and did not nap during the day. (TR 18). The ALJ found that Plaintiff exhibited mild difficulties in social functioning based on Plaintiff's statements that he cared for his mother and interacted with other relatives. (TR 18). The ALJ found that Plaintiff exhibited mild difficulties in maintaining concentration, persistence, or pace because the evidence showed Plaintiff could concentrate and was persistent. (TR 19). The ALJ also found no episodes of decompensation lasting for an extended duration based on evidence showing he could cope with limited change and increased mental demands and did not need a highly supporting environment, and was able to function independently outside of the home. (TR 19). Based on these findings of no more than mild functional limitations, the ALJ

concluded that Plaintiff's "mental impairments are not 'severe'" and Plaintiff did not have "further limitations in work-related functions" with respect to his mental residual functional capacity for work. (TR 19).

The regulations set forth a "special technique" to be applied to the evaluation of mental impairments "at each level in the administrative review process." 20 C.F.R. §§404.1520a, 416.920a. Because the ALJ did not follow this "special technique" prescribed in the regulations at step two, but included the relevant findings regarding functional limitations stemming from Plaintiff's mental impairments at step three, the step two and step three findings in the ALJ's decision are superficially inconsistent.

Defendant Commissioner asserts that the ALJ's step three finding of non-severe mental impairments represented a typographical error and that no remand is needed for clarification because substantial evidence supports the ALJ's ultimate determination. The undersigned disagrees with Defendant's interpretation of the ALJ's decision. On its face, the ALJ's decision reflects that the ALJ found Plaintiff's mental impairments were not severe after the ALJ set forth her findings concerning functional limitations, an analysis that was necessary for a sufficient evaluation of the severity of Plaintiff's mental impairments under the applicable regulations.

"[A]n error at step two of the sequential evaluation concerning one impairment is usually harmless when the ALJ . . . finds another impairment is severe and proceeds to the remaining steps of the evaluation." Grotendorst v. Astrue, 370 Fed. Appx. 879, 883, 2010 WL 1049791, *4 (10th Cir. Mar. 22, 2010)(unpublished op.)(citing Carpenter v. Astrue, 537

9

F.3d 1264, 1266 (10th Cir. 2008), and Oldham v. Astrue, 509 F.3d 1254, 1256-1257 (10th Cir. 2007)). Even assuming that the ALJ erred by initially stating that Plaintiff had severe mental impairments at step two, the ALJ's subsequent analysis in the decision included consideration of the requisite functional areas in evaluating Plaintiff's mental impairments. Thus, the step two error is harmless.

Plaintiff contends that the ALJ erred in failing to discuss all of the functional limitations set forth in the written assessment of a consultative reviewer. The ALJ is not required to discuss every piece of evidence in the record. The consultative reviewer, Dr. Sampson, completed a mental RFC assessment on March 24, 2008. (TR 535-536). In this assessment, Dr. Sampson opined Plaintiff was not significantly limited due to a mental impairment in numerous activities, including the ability to understand and remember short and simple instructions, the ability to carry out short and simple instructions, the ability to sustain an ordinary routine without special supervision, the ability to make simple work-related decisions, the ability to ask simple questions or seek assistance, the ability to adhere to basic standards of neatness and cleanliness, the ability to be aware of normal hazards and take appropriate precautions, and the ability to set realistic goals or make plans independently of others. (TR 535-536). Dr. Sampson opined that Plaintiff was moderately limited in other functional activities, including the ability to understand, remember, and carry out detailed instructions, the ability to maintain attention and comprehension for extended periods of time, the ability to work with others without being distracted by them, the ability to complete a normal workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others. (TR 535-536).

Non-treating physicians' opinions are not entitled to controlling weight, and the ALJ need not give specific reasons for giving lesser weight to non-treating physicians' opinions. Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003). However, the ALJ is required to consider the opinions of non-treating physicians and to provide specific, legitimate reasons for rejecting such opinions. Id. (citing 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling 96-5p, 1996 WL 374183, *1 (1996), and Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).

The ALJ did not ignore or misstate Dr. Sampson's assessment. Rather, the ALJ accurately noted that the consultative reviewer had assessed Plaintiff as capable of performing simple and two step instructions and capable of accepting instructions and performing work requiring little independent decision making. (TR 22). With respect to the consultative reviewer's findings of moderate limitations in maintaining concentration, persistence or pace, the ALJ reasoned that Plaintiff's activities reflected a greater ability to maintain concentration, persistence, or pace. (TR 22). Although the ALJ did not expressly reject Dr. Sampson's assessment of moderate limitations in some areas of social functioning, the ALJ implicitly rejected the assessment when the ALJ found that Plaintiff exhibited only

mild difficulties in maintaining social functioning based on Plaintiff's statements concerning his activities. No treating mental health professional found that Plaintiff's work-related mental abilities were limited in the areas of social functioning or in maintaining concentration, persistence or pace, and neither Plaintiff or Dr. Sampson pointed to specific medical evidence of persistent functional limitations in the areas of social functioning or in maintaining concentration, persistence or pace. No error occurred in this regard.

IV. Step Four - RFC Finding and Credibility

Plaintiff contends that the ALJ erred in determining his physical RFC for work and erred in evaluating Plaintiff's credibility. At the fourth step of the required evaluation process, the ALJ is required to determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993).

In support of his claim of error, Plaintiff points to the ALJ's findings at step two that Plaintiff's obesity and hypertension were severe impairments. After finding that Plaintiff's obesity constituted a severe impairment, the ALJ addressed the impairment at step three:

> The claimant's obesity was evaluated under [SSR] 02-1p, and it

> was determined that his obesity was not of such a level that it resulted in an inability to ambulate. As set out above, [Plaintiff's] gait was normal for speed, stability, and safety. There is no report of complications caused by obesity. The claimant was encouraged to exercise and diet, which he has not done. The record does not establish that obesity has increased in severity or coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.

(TR 18-19). At the fourth step, the ALJ undertook the required analysis of Plaintiff's RFC for work and found that Plaintiff had the RFC to perform work at the light exertional level with some additional restrictions on exertional functions. (TR 19). Plaintiff contends that the ALJ failed to provide an adequate explanation or discussion of the effect of Plaintiff's obesity on his other severe impairments. Plaintiff does not point to medical evidence of persistent work-related limitations stemming from Plaintiff's obesity that are inconsistent with the ALJ's RFC finding for a limited range of light work. Plaintiff points to two written assessments completed by physicians in connection with Plaintiff's application for stated-funded assistance in Virginia in 2007. In one of these assessments completed by Dr. Nair and dated August 13, 2007, the physician attested that Plaintiff qualified for state-funded assistance because Plaintiff was unable to work for only one month due to his inability to sit or stand for prolonged periods of time and needed frequent breaks. (TR 441). Dr. Nair's statement does not relate this temporary exertional limitation to Plaintiff's obesity, and, as the ALJ points out in her decision (TR 16), Dr. Nair stated that Plaintiff's prognosis might improve with treatment and exercise. (TR 441). In a written assessment completed by Dr. Barte on August 30, 2007, Dr. Barte attested that Plaintiff qualified for state-funded

assistance because Plaintiff was unable to work for only six months due to his inability to repetitively bend or walk long distances. (TR 442). Dr. Barte related Plaintiff's exertional limitations to his obesity and also to other impairments, including "chronic back pain with L5-S1 radiculopathy." (TR 442). Moreover, these documents do not provide medical evidence of a functional limitation in Plaintiff's ability to sit, stand, or perform other work-related activities for the requisite twelve-month duration.

The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

The ALJ found that Plaintiff's credibility was diminished for a number of reasons. (TR 20-21). Although Plaintiff complains that the ALJ did not consider certain evidence or adequately question Plaintiff at the hearing, the ALJ stated reasons for the credibility determination, and those reasons are full supported by the record. No error occurred with

respect to the ALJ's step four RFC and credibility findings.[3]

V. Step Five

Plaintiff contends that there is not substantial evidence to support the ALJ's step five finding. Plaintiff first contends that the ALJ did not adequately determine whether Plaintiff's transferable skills were sufficient to allow him to perform the semi-skilled jobs identified by the VE at the hearing. Plaintiff relies on Social Security Ruling ("SSR") 82-41, in which the agency set forth its policy regarding the determination of transferability of work skills in social security disability proceedings. Titles II and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979, SSR 82-41, 1982 WL 31389 (1982). The ruling describes, *inter alia*, a "skill" and "transferability" and provides guidance for determining when a job is unskilled or semiskilled and whether skills are transferable to other jobs.

In this case, the VE testified that Plaintiff's previous job as an auto detailer was medium, unskilled work, that Plaintiff's previous jobs as a building maintenance worker, grill cook, warehouse worker, groundskeeper, janitor/sexton, and auto body repair helper were unskilled work. (Supp. TR 30-31). The VE further testified that Plaintiff's previous job as a stock clerk, a local delivery worker, a fast food clerk, and a lube tech were

---

[3]Plaintiff contends that the ALJ erred by failing to "explain how Plaintiff's documented right foot drop allowed him to walk without tripping for 30 minutes at a time." Plaintiff's Opening Brief, at 7. Plaintiff provides no references to medical evidence in the record to support any such functional limitation of "tripping." In the absence of supporting medical evidence of any functional limitation consistent with this conclusory assertion, the assertion of error is without merit.

semiskilled or skilled work. (Supp. TR 31). The VE testified that Plaintiff's previous jobs had provided transferable skills of record keeping, inventory management, date entry, and following a recipe or other instructions. (Supp. TR 33). The ALJ posed a hypothetical inquiry to the VE to identify jobs that an individual could perform with Plaintiff's previous work experience and transferable skills, as well as Plaintiff's RFC and other vocational characteristics. (Supp. TR 31-33). In response to this hypothetical inquiry, the VE identified the light, semiskilled positions of retail store keeper and hotel clerk, the sedentary, semiskilled position of receptionist, as well as the light, unskilled job of bench assembler and the sedentary, unskilled jobs of touch up screener and polisher. (Supp. TR 32).

Plaintiff asserts that "record keeping," "inventory management" and "data entry" are not skills. However, Plaintiff provides no authority for this assertion, and it is without merit as these functions generally fall within the category of skills as defined by the agency. See SSR 82-41, 1982 WL 31389, *3 - *4 (describing skills). Plaintiff asserts that the ALJ failed to obtain specific testimony from the VE concerning which of Plaintiff's transferable skills would transfer to the semiskilled jobs identified by the VE. Given Plaintiff's age of 49 at the time of the ALJ's decision, the issue of transferability of skills was not paramount. Id. at *5; 20 C.F.R. §§ 404.1563, 416.963; 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 201.00(c), 202.00(c).

The ALJ was entitled to rely on the VE's expertise and testimony that Plaintiff's skills obtained in his previous semiskilled jobs were transferable to the semiskilled jobs identified by the VE. Plaintiff has not provided anything other than mere speculation that Plaintiff's previously-obtained skills were not transferable to other jobs available in the economy, as

16

identified by the VE and as found by the ALJ. Moreover, the ALJ inquired of the VE as to whether the VE's testimony was inconsistent with the job descriptions provided in the United States Department of Labor's <u>Dictionary of Occupational Titles</u> ("DOT"), and the VE responded that her testimony was consistent with the DOT. (Supp. TR 33). Furthermore, the VE identified unskilled jobs that were available to a hypothetical individual with Plaintiff's RFC for work and vocational characteristics. Consequently, any error in the ALJ's reliance on the semiskilled jobs identified by the VE in making the step five determination was harmless.

Plaintiff contends that the ALJ erred by failing to include in the RFC the "moderate" limitations in mental functioning assessed by Dr. Sampson in the consultative reviewer's mental RFC assessment. However, the ALJ found that Plaintiff's mental impairments were not severe and did not further limit Plaintiff's ability to perform work. There is substantial evidence in the record to support the ALJ's findings. The ALJ provided reasons for disregarding Dr. Sampson's RFC assessment of moderate limitations in some areas of social functioning and concentration, persistence or pace, and those reasons are supported by substantial evidence in the record, including the report of a treating mental health professional in October 2007 that Plaintiff exhibited normal speech, full affect, low mood, linear thought processes, no psychosis, no active suicidal or homicidal ideation, and he was pleasant and engaging and appeared younger than his age. (TR 452). The reports of other mental health professionals concerning Plaintiff's mental status were consistent with the ALJ's finding that Plaintiff's mental impairments did not affect his ability to work and that

17

his mood swings responded to medication and a decrease in his use of illegal substances. (TR 474, 475, 484, 488-489, 491, 498-499).

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before     April 18th , 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this    28th      day of    March       , 2011.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE